UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
BRIAN LUNNON, on behalf of himself and
others similarly situated in the proposed FLSA
Collective Action,

                   Plaintiff,

       -against-

RIGOLO PRODUCTIONS LLC, and
RICK ROSA,

               Defendants.
-------------------------------------------------------X
LEVY, United States Magistrate Judge:

REPORT AND
RECOMMENDATION
22 CV 7560 (RPK)(RML)

      By order dated June 12, 2024, the Honorable Rachel P. Kovner, United States

District Judge, referred plaintiff's motion for a default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that plaintiff's motion

be granted and that plaintiff be awarded $16,905, plus prejudgment and post-judgment interest,

and $11,642.10 in attorney's fees and costs.

## BACKGROUND

      Plaintiff Brian Lunnon ("plaintiff") commenced this purported collective action

on December 13, 2022,[1] asserting claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201,

*et seq.* ("FLSA") and the New York Labor Law ("NYLL").  (See Complaint, dated Dec. 13, 2022

("Compl."), Dkt. No. 1.)  Plaintiff alleges that he was employed as a barback at defendants'

---

[1] On December 20, 2022, Margarita Serrano filed a Consent to Become a Party in a Collective
Action.  Plaintiff's counsel has stated that it anticipates filing a notice of voluntary dismissal,
without prejudice, with respect to her claims.  (See Plaintiff's Memorandum of Law, dated June
11, 2024, Dkt. No. 32, at 1 n.1.)

performance art space and cocktail lounge known as "MoonRise,"[2] located at 1329 Willoughby Avenue in Brooklyn, New York, from June to August 2022.  (Id. ¶ 6.)  The defendants are Rigolo Productions LLC ("Rigolo" or the "corporate defendant"), alleged to be a limited liability company organized and existing under the laws of Florida, and Rick Rosa ("Rosa" or the "individual defendant"), sued individually and in his capacity as an owner, officer and/or agent of Rigolo.  (Id. ¶¶ 9, 15.)  Plaintiff claims that defendants failed to pay him "any wages for his work performed from approximately August 1, 2022 to, through and including, August 31, 2022" and "unlawfully withheld all, or nearly all, of Plaintiff's tips[.]"  (Id. ¶¶ 33, 36.)

On March 27, 2023, the Clerk of the Court entered a Certificate of Default against Rigolo.  (See Clerk's Entry of Default, dated Mar. 27, 2023, Dkt. No. 12.)  On September 21, 2023, the Clerk of the Court entered a Certificate of Default against Rosa.  (See Clerk's Entry of Default, dated Sept. 21, 2023, Dkt. No. 22.)  Plaintiff seeks an award of $5,239.29 in unpaid wages, $5,239.29 in liquidated damages, $9,550 in statutory damages under the Wage Theft Prevention Act, $10,825 in attorney's fees, and $817.10 in costs, plus prejudgment interest. (Plaintiff's Memorandum of Law, dated June 11, 2024 ("Pl.'s Mem."), Dkt. No. 32, at 19.)[3]

---

[2]  MoonRise is also referred to as a "coffee company" in the complaint.  (See Compl. ¶ 19.)  This appears to be an error.  See MoonRise by Rigolo, https://www.moonrise.nyc/ [https://perma.cc/NKE7-UW94].

[3]  By letter dated March 26, 2024, plaintiff's counsel advised the court that defendants had "effectuated an 'under the table' settlement with Plaintiff Brian Lunnon, in violation of Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015)."  (Letter of Jason Mizrahi, Esq., dated Mar. 26, 2024, Dkt. No. 27.)  I then scheduled an in-person hearing for April 11, 2024, at which plaintiff's counsel appeared, but defendants did not, despite having been advised of the date and time of the conference.  (See Minute Entry, dated Apr. 11, 2024.)  Defendants also failed to appear for a telephone conference on May 16, 2024, after having been warned that their failure to appear would likely result in sanctions, including a recommendation that a default judgment be entered against them.  (See Minute Entry, dated May 16, 2024.)  Defendants then failed to appear for a third time, on May 28, 2024, at which point plaintiff's counsel was directed to move

(Continued….)

**DISCUSSION**

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit. Blanco v. M&R Plaza Deli Inc., No. 23 CV 9408, 2024 WL 4859467, at *2 (E.D.N.Y. Oct. 29, 2024), report and recommendation adopted, 2024 WL 4855214 (E.D.N.Y. Nov. 21, 2024). Here, plaintiff has demonstrated that he properly served defendants with the summons and complaint. (See Affidavit of Service of Paul J. Santspree Sr., sworn to Dec. 22, 2022, Dkt. No. 9; Affidavit of Service of Jeremy Coley, sworn to Aug. 9, 2023, Dkt. No. 17.) Plaintiff has also demonstrated that he served the Motion for Default Judgment and accompanying submissions on defendants in compliance with Local Civil Rule 55.2(a). (See Declaration of Jason Mizrahi, Esq., dated June 11, 2024 ("Mizrahi Decl."), Dkt. No. 33, Ex. G.)

---

for a default judgment. (See Minute Entry, dated May 28, 2024.) After plaintiff filed the instant motion, defendant Rosa entered a notice of pro se appearance and requested an extension of time to respond. (See Letter of Juan Rosa, dated Aug. 8, 2024, Dkt. No. 35; Notice of Pro Se Appearance, dated Sept. 6, 2024, Dkt. No. 36.) That request and a second one were both granted, giving Rosa until October 6, 2024 to file his response. (See Order, dated Aug. 12, 2024; Letter of Juan Rosa, dated Sept. 6, 2024, Dkt. No. 37; Order, dated Sept. 11, 2024.) Rosa never filed any response.

A.  Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law."  Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted).  A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [plaintiff's] allegations establish [defendants'] liability as a matter of law." Id.

Plaintiff has sufficiently pleaded factual allegations that give rise to liability for unpaid wages under the FLSA and NYLL.  (See Compl. ¶¶ 55-62.)  The extent to which plaintiff can recover damages for these violations initially depends on whether: (1) his claims are timely; (2) he is a covered employee under the FLSA and the NYLL; and (3) defendants were plaintiff's employers under the FLSA and NYLL.

1.  Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior.  29 U.S.C. § 255(a).  Here, the complaint filed on December 13, 2022 alleges willful violations of the FLSA.  (See Compl. ¶¶ 52, 56, 60.)  Therefore, the FLSA's three-year statute of limitations

applies.  Because plaintiff alleges that he was not properly paid wages for the period of August 1

through 31, 2022, I find that those claims are timely under the FLSA.  Regardless of willfulness,

plaintiff's claims must arise within six years prior to the filing of the complaint to be timely

under the NYLL.  See N.Y. LAB. L. §§ 198(3), 663(3).  Thus, plaintiff's claims are also timely

under the NYLL.

2.  <u>Employee Coverage</u>

Since the provisions of the FLSA and NYLL apply only to employees of covered

employers, a plaintiff in a wage and hour action must show that he or she was the defendant's

employee, and that the defendant was an employer subject to the coverage of each statute.  For

purposes of the FLSA, an employee is "any individual employed by an employer," meaning any

individual whom an employer "suffer[s] or permit[s] to work."  29 U.S.C. §§ 203(e)(1), (g).

Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work

for a covered employer.  An employer is defined as "any person acting directly or indirectly in

the interest of an employer in relation to an employee."[4]  29 U.S.C. § 203(d).  "Person" is

defined as "an individual, partnership, association, corporation, business trust, legal

representative, or any organized group of persons."  <u>Id.</u> § 203(a).  In addition, for employees to

be covered by the FLSA, they must show either that their employer was an enterprise engaged in

interstate commerce or that their work as employees regularly involved them in interstate

commerce.  <u>See id.</u> § 203(s)(1).

Plaintiff has adequately pleaded that he was an employee to whom no statutory

---

[4]  "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  <u>Copantitla v. Fiskardo Estiatorio, Inc.</u>, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); <u>see also</u> <u>Oaxaca v. Hudson Side Cafe Inc.</u>, No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018); <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

exemptions apply, insofar as he alleges that he worked for defendants as a non-managerial employee from June to August 2022.  (Compl. ¶ 6; Affidavit of Brian Lunnon, sworn to June 11, 2024 ("Lunnon Aff."), Dkt. No. 34, ¶¶ 3, 4, 13.)  He additionally alleges that defendants "engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."  (Compl. ¶ 11).  Furthermore, plaintiff alleges that Rigolo had a gross annual volume of sales of not less than $500,000 during the relevant period.  (Id.)

On a motion for default judgment, it is sufficient to plead that plaintiff "handled goods or items that originated out-of-state."  See, e.g., Brummell v. K1 HVAC Inc., No. 19 CV 5488, 2021 WL 3888138, at *3 (E.D.N.Y. Aug. 13, 2021); see also Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (holding that there is enterprise coverage when workers "handle goods or materials that have moved or been produced in interstate commerce.")  Accordingly, I find that plaintiff has sufficiently alleged that he is a covered employee under the FLSA and the NYLL.

3.  Employer Status of Defendants

Plaintiff seeks to hold two defendants—one limited liability corporation and one individual—liable for his unpaid wages.  (Compl. ¶¶ 9-18.)  To establish the corporate defendant's liability under the FLSA and NYLL, plaintiff must allege that it was an "enterprise engaged in commerce or in the production of goods for commerce" within the applicable statutory definition.  29 U.S.C. § 203(s)(1).  As discussed above, plaintiff has sufficiently established that the corporate defendant was his employer and that it was engaged in commerce. (See Compl. ¶¶ 11-13; Lunnon Aff. ¶ 12.)

To hold the individual defendant liable under the FLSA and NYLL, plaintiff

must allege that Rosa was his "employer" within the broad meaning of 29 U.S.C. § 203(d).  See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 35-37 (E.D.N.Y. 2015).  The Second Circuit has set forth a series of non-exclusive factors for evaluating the "economic reality" of a given relationship to determine whether an employment relationship exists.  See Carter v. Dutchess Cmty. Coll., 738 F.2d 8, 12 (2d Cir. 1984).  These factors include whether the alleged employer: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.  Id.; see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  Here, plaintiff alleges that Rosa was the owner, officer, and/or agent of the corporate defendant; that he possessed and exercised operational control over the corporate defendant; and that he had the authority to determine the wages and compensation of employees, establish employees' schedules, maintain employee records, hire and fire employees, and set the salaries of employees.  (Compl. ¶¶ 17, 27; see also Lunnon Aff. ¶ 12.)  Thus, plaintiff has alleged all four of the Carter factors and I therefore find that Rosa was plaintiff's employer.  Accordingly, plaintiff has established the liability of both defendants under the FLSA and NYLL.

B. Damages

Once the court determines that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "The burden is on the

plaintiff to establish [his or her] entitlement to recovery." <u>Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc.</u>, 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009). Plaintiff requests unpaid wages, liquidated damages, and statutory damages, plus pre-judgment interest. (Pls.' Mem. at 19.) I will address each category of damages in turn.

    1. <u>Unpaid Wages</u>

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" <u>Gunawan</u>, 897 F. Supp. 2d at 88 (quoting <u>Zeng Liu v. Jen Chu Fashion Corp.</u>, No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); <u>see also</u> <u>Kim v. Kum Gang, Inc.</u>, No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted). Here, because defendants have defaulted and no employment records have been produced, the court will presume the accuracy of plaintiff's recollection and estimates of hours worked.

Plaintiff asserts that he regularly worked two to three days per week, from approximately 7:00 p.m. to 4:00 a.m. (<i>i.e.</i>, approximately nine hours each day), for an average of 22.5 hours each week. (Lunnon Aff. ¶ 5; Compl. ¶ 31; Mizrahi Decl., Ex. A.) He states that his regular hourly pay rate was $21, but that defendants failed to pay him any wages for the month of August 2022. (Lunnon Aff. ¶¶ 6, 7; Compl. ¶¶ 32, 33.) Based on my calculations, plaintiff is owed $1,890 in unpaid wages (22.5 x 21 x 4).

## 2.  Withheld Gratuities

Plaintiff also alleges that defendants "maintained a policy and practice of unlawfully appropriating" employees' tips, stating that defendants required plaintiff and the other employees "to pool their tips pursuant to a mandated tip sharing scheme" and then "unlawfully withheld all, or nearly all," of those tips.  (Lunnon Aff. ¶¶ 8-10; Compl. ¶¶ 34-36.)

Section 196-d of the NYLL provides that "[n]o employer . . . shall demand . . . any part of the gratuities received by an employee, or retain any part of a gratuity[.]"  N.Y. LAB. L. § 196-d. The FLSA contains a similar prohibition.  See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 241 (2d Cir. 2011) ("Thus, 29 U.S.C. § 203(m) and § 196–d bar the same types of tipping practices.").

Based on his experience, conversations with co-workers, and personal observations, plaintiff estimates the amount of unlawfully deducted gratuities each week to be approximately $250.  (Lunnon Aff. ¶ 11.)  He therefore seeks $3,250 in unlawfully retained gratuities for the thirteen weeks he worked for defendants.  (See Pl.'s Mem. at 12-13.)  I find plaintiff's estimate reasonable, and I therefore recommend that plaintiff be awarded $3,250 in misappropriated tips.  See Solis v. Tropical Rest. Bar Inc., No. 23 CV 1707, 2024 WL 4271234, at *15 (E.D.N.Y. Sept. 19, 2024) ("Plaintiff is entitled to the tips that Tropical Restaurant unlawfully withheld and the Court may accept Plaintiff's estimates regarding the amount he is owed."); Zabrodin v. Silk 222, Inc., 702 F. Supp. 3d 102, 123 (E.D.N.Y. 2023) (awarding estimated tips); Gunawan, 897 F. Supp. 2d at 90 (same).

## 3.  Liquidated Damages

Plaintiff additionally requests liquidated damages for unpaid wages and withheld gratuities.  (See Pl.'s Mem. at 13-14.)  Plaintiff may recover liquidated damages in the amount of

100 percent of unpaid wages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. LAB. L. §§ 198(1-a), 663; see Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012); see also Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages under both the FLSA and NYLL for the same period). Here, defendants have not answered the complaint or appeared for scheduled proceedings and thus cannot demonstrate a "good faith" basis for believing the underpayment of wages was lawful. See Herrera v. Tri-State Kitchen & Bath, Inc., No. 14 CV 1695, 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith). I accordingly recommend that plaintiff be awarded $5,140 in liquidated damages, which is the amount equal to his unpaid wages and withheld tips.

### 4. Wage Notices and Wage Statements

Plaintiff also seeks statutory damages for defendants' failure to provide wage notices and wage statements as required by NYLL §§ 195(1) and 195(3). (Pl.'s Mem. at 14-16.) Section 195(1) of the NYLL requires employers to give their employees written notice containing the "employee's rate of pay, allowances, and various other information relating to the computation of plaintiff's pay" at the time of hiring. Deng v. Frequency Elecs., Inc., 650 F. Supp. 3d 255, 265 (E.D.N.Y. 2022). Section 195(3) of the NYLL requires employers "to provide, for each pay period, a statement ('wage statement') showing how that pay was computed including deductions." Id. Plaintiff asserts that he never received a wage notice or wage statements from defendants. (Compl. ¶¶ 63-69; Lunnon Aff. ¶¶ 15-18.)

New York's Wage Theft Protection Act ("WTPA") provides for statutory damages for violations of § 195; however, the Second Circuit Court of Appeals has held that, to establish Article III standing, a plaintiff cannot rely on "technical violations" of the New York Labor Law but must allege "'actual injuries suffered as a result of the alleged . . . wage notice and wage statement violations.'"  Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 305 (2d Cir. 2024) (quoting and affirming Guthrie v. Rainbow Fencing Inc., No. 21 CV 5929, 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022)).  The court explained that "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm" and "unless the plaintiff-employee can show that he or she would have undertaken [self-]advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195."  Id. at 308.  The plaintiff must "'link the general harms an employee *might* experience to any harms that [the plaintiff] did, in fact, experience.'"  Id. at 311 (quoting Guthrie, 2023 WL 2206568, at *4) (italics in original).

Here, plaintiff alleges that defendants

> failed to furnish to Plaintiff at the time of hiring . . . a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other, allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address, if different; the telephone number of the employer, and anything otherwise required by law.

(Compl. ¶ 65.)  Plaintiff further alleges that

> [w]ith each payment of wages, Defendants failed to provide Plaintiff with a statement listing each of the following[:] the dates

> of work covered by the payment of wages; name of employee;
> name of employer; address and phone number of employer; rate or
> rates of pay and basis thereof, whether paid by the hour, shift, day,
> week, salary, piece, commission, or other; gross wages;
> deductions; allowances, if any, claimed as part of the minimum
> wage; the number of regular hours worked; the number of overtime
> hours worked, as required by the NYLL § 195(3).

(Id. ¶ 68.) In his affidavit, plaintiff states that defendants' "failure to provide accurate wage notices and accurate wage statements denied [him] of [his] statutory right to receive true and accurate information about the nature of [his] employment and related compensation policies" and that "the breach of the obligations injured [him] by denying [him] the right to know the conditions of [his] compensation, and resulted in the underpayment of wages averred above." (Lunnon Aff. ¶¶ 18-19.)

This is sufficient to establish standing under Guthrie. See, e.g., Solis, 2024 WL 4271234, at *13 ("Plaintiff sufficiently establishes Article III standing when he alleges that the denial of the statutory right to wage notices and wage statements ultimately resulted in underpayment.") (citing Guthrie, 113 F.4th at 309-10; Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022) ("a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has . . . a concrete interest" sufficient to establish standing); Stih v. Rockaway Farmers Mkt., Inc., No. 22 CV 3228, 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (plaintiff alleged that failure to provide him with proper wage notices injured him by "denying him the right to be adequately apprised of the terms and conditions of his employment," including allowances defendants purported to claim against his salary)).

The penalty for failing to provide a wage notice is $50 per workday, up to $5,000. N.Y. Lab. L. § 198(1-b). The penalty for failing to provide wage statements is $250 per workday, up to $5,000. Id. § 198 (1-d). Plaintiff's tenure with defendants for 2-3 days per week

for thirteen weeks (approximately 32.5 workdays total) entitles him to recover $1,625 (32.5 × $50) for wage notice violations under § 195(1).  For violations of § 195(3), plaintiff is entitled to the $5,000 statutory maximum (32.5 workdays × $250 = $8,125).  Accordingly, I recommend that plaintiff be awarded $6,625 on these claims ($1,625 + $5,000).  N.Y. LAB. L. §§ 198(1-b), (1-d).

### 5.  Prejudgment Interest

Plaintiff also requests prejudgment interest.  (Compl. at 12; Pl.'s Mem. at 16-17.) "[T]he NYLL permits the award of both liquidated damages and pre-judgment interest."  Fermin, 93 F. Supp. 3d at 48; see also Ruiz v. JHDHA, Inc., No. 23 CV 7896, 2024 WL 5077665, at *3 (S.D.N.Y. Dec. 11, 2024).  Prejudgment interest is calculated on the unpaid wages due under the NYLL, but not on liquidated or statutory damages.  See Diaz v. Rene French Cleaners, Inc., No. 20 CV 3848, 2022 WL 4646866, at *11 (E.D.N.Y. Aug. 29, 2022), report and recommendation adopted, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022).  The rate of interest is calculated at nine percent per annum, and, where damages were incurred at various times, may be calculated from a single reasonable intermediate date.  N.Y. C.P.L.R. §§ 5004, 5001(b).  The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating pre-judgment interest.  See Fermin, 93 F. Supp. 3d at 49; Diaz, 2022 WL 4646866, at *11.  The midpoint of plaintiff's employment was July 16, 2022.  Accordingly, I respectfully recommend that prejudgment interest be awarded on plaintiff's total unpaid wages of $5,140 from July 16, 2022 to the date of this court's judgment at a per diem interest rate of $1.27 ($5,140 × (0.09/365)).

### 6.  Post-judgment Interest

"Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a)."

Jimenez v. Green Olive Inc., No. 23 CV 8805, WL 3763467, at *22 (E.D.N.Y. Aug. 13, 2024). "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." Duffy v. Oyster Bay Indus., Inc., No. 10 CV 3205, 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), report and recommendation adopted, 2011 WL 2259749 (E.D.N.Y. June 2, 2011). Section 1961(a) provides that post-judgment interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a). Therefore, I respectfully recommend that plaintiff be awarded post-judgment interest, to be calculated from the date judgment is entered in this action until the date of payment, under 28 U.S.C. § 1961.

## C. Attorney's Fees and Costs

As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL. See 29 U.S.C. § 216(b), N.Y. LAB. L. §§ 198, 663(1). Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records. See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam). Plaintiff has satisfied this requirement. (See Mizrahi Decl., Ex. B.)

14

The court next assesses whether plaintiff's counsel requests a reasonable hourly rate. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Loc. Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted). A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case." Arbor Hill, 522 F.3d at 184 n.2; see Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

Plaintiff's counsel requests an hourly rate of $350 for the services of Jason Mizrahi, an associate at Levin-Epstein & Associates, P.C., who has practiced law since 2016. (Mizrahi Decl. ¶ 9.) At least one court in this district has approved this billing rate for Mr. Mizrahi. See Perez v. 66 Meat Corp., No. 22 CV 7003, 2024 WL 2716851, at *8 (E.D.N.Y. May 28, 2024), report and recommendation adopted, 2024 WL 3161838 (E.D.N.Y. June 25, 2024).[5] Therefore, I find that $350 per hour is a reasonable rate for Mr. Mizrahi. Plaintiff also requests an hourly rate of $50 for paralegal Alexis Abrego. (See Mizrahi Decl., Ex. B.) This hourly rate for Ms. Abrego is reasonable because it is below $70 to $100 per hour, the typical range of fee awards for legal support staff in wage and hour cases. See Solis, 2024 WL 4271234, at *18.

---

[5] But see Solis, 2024 WL 4271234, at *17 (reducing hourly rate for Mr. Mizrahi from $350 to $325).

The court next looks to the reasonableness of the number of hours billed. To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday, 42 F.3d at 134). The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)). Here, plaintiff's counsel seeks compensation for thirty-two hours of work representing 30.75 hours by Mr. Mizrahi and 1.25 by Ms. Abrego.[6] (Mizrahi Decl., Ex. B.) Having reviewed the submitted time records, I find the total of thirty-two hours to be reasonable. See, e.g., Zhang v. Asian Moon Rest. Corp., No. 20 CV 2776, 2022 WL 1422576, at *9 (E.D.N.Y. Mar. 15, 2022) (finding 44.8 hours to be within the reasonable range for a single-plaintiff FLSA default case), report and recommendation adopted, 2022 WL 1460275 (E.D.N.Y. May 9, 2022); Ahn v. Sun Cleaners Inc., No. 19 CV 5919, 2022 WL 586022, at *12 (E.D.N.Y. Feb. 18, 2022) (finding thirty-five hours to be a reasonable number billed in a single-plaintiff FLSA default case); Du v. CGS Metal Fabrication Inc., No. 19 CV 1821, 2022 WL 987316, at *13 (E.D.N.Y. Jan. 14, 2022) (finding 31.1 hours reasonable in a single-plaintiff FLSA default case). Accordingly, I respectfully recommend that plaintiff be awarded $10,825 in attorney's fees.[7]

---

[6] Four one-hour entries for process servers and filing fees are listed under Ms. Abrego's name but appear to reflect costs to the firm and not hours of work she billed at her hourly rate.

[7] $30.75 \times \$350 = \$10,762.50$. $1.25 \times \$50 = \$62.50$. $\$10,762.50 + \$62.50 = \$10,825$.

Plaintiff additionally requests compensation for $817.10 in costs, representing $402 for this court's filing fee, $362.4 in service of process fees, and $52.70 for overnight mail. (Mizrahi Decl., Exs. B, C.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). Plaintiff has submitted sufficient documentation for filing fees and service of process costs. (See Mizrahi Decl., Ex. C.) Accordingly, I find $817.10 to be reasonable out-of-pocket expenses.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion be granted in part and denied in part. Furthermore, I respectfully recommend that plaintiff be awarded $16,905, representing $5,140 in unpaid wages, $5,140 in liquidated damages, and $6,625 for wage notice and wage statement violations. I also recommend that prejudgment interest be awarded on plaintiff's unpaid wages of $5,140 from July 16, 2022 to the date of this court's judgment at a per diem rate of $1.27. Additionally, I recommend that mandatory post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a). Finally, I recommend that plaintiff receive $10,825 in attorney's fees and $817.10 in costs.

Plaintiff's counsel is directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation. Any objections to this Report and Recommendation must be filed

electronically within fourteen days.  Failure to file objections within the specified time waives

the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a),

6(d).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      January 27, 2025